**ALL–IOWA CONTRACTING CO., Plaintiff,**

v.

**LINEAR DYNAMICS, INC., Wholly Owned Subsidiary of Lafarge Road Marking, Inc., Defendant.**

No. C01–2035.

United States District Court,
N.D. Iowa,
Eastern/Waterloo Division.

Oct. 23, 2003.

Gary J. Boveia, Boveia Law Firm, Waverly, IA, for Plaintiff.

Craig A. Marvinney, David D. Yeagley, Ulmer & Berne, LLP, Cleveland, OH, Richard A. Stefani, Gray, Stefani & Mitvalsky, PLC, Cedar Rapids, IA, for Defendant.

## ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

READE, District Judge.

## TABLE OF CONTENTS

I.   INTRODUCTION ..................................................971

II.  STANDARD OF REVIEW ..........................................972

III. FACTUAL BACKGROUND .........................................972
    A.   The Epoxy Supplied for the Minnesota DOT Projects .....................972
    B.   Delivery of the Maxi–900 Epoxy Application Unit ..........................975
    C.   Breach of Implied Warranty of Merchantability Claim Relating to the
       Maxi–900 ........................................................976
    D.   Model 60 Skid–Mount Epoxy Application Unit.............................976

IV.  LEGAL ANALYSIS ...............................................977
    A.   Negligence Claim Relating to the Epoxy...................................977
    B.   Breach of Implied Warranty Claims Relating to the Epoxy.................978
       1.   The Terms of the Contract .........................................978
       2.   Unconscionability .................................................979
    C.   Breach of Contract Claim Relating to the Late Delivery of the Maxi–900.....980
    D.   Liquidated Damages Claims ............................................981
    E.   Breach of Implied Warranty of Merchantability Relating to the Maxi–900.....981
    F.   Breach of Implied Warranty of Merchantability Relating to the Model 60.....981
    G.   Consequential Damages Claims ........................................982

V.   CONCLUSION...................................................982

## I.  INTRODUCTION

On May 29, 2001, Plaintiff All–Iowa Contracting Co. ("All–Iowa") filed this lawsuit against Defendant Linear Dynamics, Inc., a wholly owned subsidiary of Lafarge Road Marking, Inc., in the Iowa District Court for Black Hawk County.[1] Linear Dynamics removed the matter to this Court on June 25, 2001 on the basis that this Court has diversity subject matter jurisdiction. Linear Dynamics invokes this Court's diversity jurisdiction inasmuch as complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332. All–Iowa is an Iowa corporation with its principal place of business in the state of Iowa. Linear Dynamics, Inc. is a Delaware corporation with its principal place of business in the state of New Jersey. Lafarge Road Marking, Inc. is a Maryland corporation with its principal place of business in the state of Virginia.

All–Iowa's Complaint, as amended, contains four counts. Count I alleges actual damages and liquidated damages resulting from alleged negligence, breach of implied warranty of merchantability, and breach of warranty of fitness for a particular purpose relating to Linear Dynamic's sale of epoxy to All–Iowa. Count II claims actual and liquidated damages resulting from alleged breach of contract involving All–Iowa's purchase of a Maxi–900 Epoxy Application Unit. Count III claims actual and consequential damages relating to alleged breach of express[2] and implied warranties of merchantability relating to the alleged failure of the Maxi–900 Epoxy Application Unit to be properly operational following delivery and placement into service. Count IV clams actual and consequential damages based on alleged breach of express[3] and implied warranties of mer-

---

**1.** Linear Dynamics is a subsidiary of Lafarge. The Court shall refer to both defendants collectively as "Linear Dynamics."

**2.** At the October 16, 2003 summary judgment hearing, All–Iowa represented to the Court that All–Iowa has abandoned all of its claims based on alleged breach of express warranty of merchantability.

**3.** As noted above, All–Iowa has abandoned its claims based on alleged breach of express warranty of merchantability.

chantability relating to the LDI Model 60 Eposkid Material Application Unit. Linear Dynamics has filed a counterclaim against All–Iowa for amounts due on account.

On June 13, 2003, Defendants filed a Motion for Summary Judgment (docket no. 38) with respect to all Counts in All–Iowa's Complaint. The Court held a hearing on the Motion for Summary Judgment on October 16, 2003.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only when the record, viewed in the light most favorable to the nonmoving party, shows there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Carter v. Ford Motor Co.*, 121 F.3d 1146, 1148 (8th Cir.1997) (citing *Yowell v. Combs*, 89 F.3d 542, 544 (8th Cir.1996)). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is material when it is a fact that "might affect the outcome of the suit under the governing law." *Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir.1999). In considering a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus.*, 475 U.S. at 587, 106 S.Ct. 1348. Further, the court must give such party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel*, 953 F.2d at 394 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

## III. FACTUAL BACKGROUND

All–Iowa's primary business is the application of pavement marking material for purposes of traffic control on hard surfaced roads in the state of Iowa as well as surrounding states. All–Iowa has performed epoxy work in Iowa, Nebraska, Kansas, Missouri and Wisconsin. Application of epoxy constitutes 40% to 50% of work available to All–Iowa in any given year. All–Iowa has been in the business of road striping for a number of years. All–Iowa's claims against Linear Dynamics concern epoxy for road striping and the equipment used to apply it. Linear Dynamics sells epoxy and other materials for road striping and manufactures striping equipment.

### A. The Epoxy Supplied for the Minnesota DOT Projects

Epoxy is a durable road striping material consisting of two component parts: the epoxy and the catalyst. During application, these two component parts are brought together and chemically react to cure. There are two general types of epoxy: a fast-curing epoxy and a slow-curing epoxy.

The reflection of road striping to oncoming drivers (the "retroreflectivity"[4]) is

---

**4.** Retroreflectivity is a function of the epoxy, the glass beads and most importantly the application of the epoxy and the beads.

achieved by spreading small round glass beads on the epoxy prior to curing. The beads become embedded in the epoxy and function as a mirror to reflect approaching headlights. Retroreflectivity can be measured and compared against quantitative standards.

Epoxy is applied using specialized striping equipment. The correct application of epoxy, including achieving acceptable retroreflectivity, is subject to a number of application-related variables, including temperature, road surface, equipment, operator knowledge, snow plow damage and the amount of epoxy and beads dispensed on the road.

On May 31, 1996, the Minnesota Department of Transportation (the "Minnesota DOT") received bids on a state project. The project was awarded to Mathy Construction Company ("Mathy") and All–Iowa entered into a sub-contract agreement with Mathy on June 17, 1996 to apply the epoxy resin pavement markings with a project start date of July 15, 1996.[5] In entering the Minnesota DOT sub-contract, All–Iowa certified for each project that the "contract, proposal, the contract bond, the plans, the specifications, the special conditions, the general conditions, any supplemental agreement ... have been available to the Sub–Contractor [All–Iowa] and have been carefully examined by the Sub–Contractor [All–Iowa]." Contractors doing work for the State of Minnesota are required to follow the specifications and requirements for the project. The contracts for the Minnesota DOT projects were available to contractors and sub-contractors. The contracts contained all of the relevant provisions, conditions and requirements for the projects, including the requirement that All–Iowa utilize slow-set epoxy. In 1996, Linear Dynamics was on the Minnesota DOT list of approved suppliers of both slow-set and fastset epoxy.

On July 1, 1996, All–Iowa ordered epoxy for the Minnesota DOT projects from Linear Dynamics. All–Iowa did not specify in writing the type of epoxy it needed for the Minnesota DOT projects. Rather, when placing their telephone order for the epoxy from Linear Dynamics, All–Iowa asked Linear Dynamics to "find out what we need and order it."

On July 5, 1996, Greg Rottinghaus, an employee of All–Iowa, picked up the epoxy and catalyst from Linear Dynamics' warehouse in Omaha, Nebraska. When he picked up the epoxy and catalyst, Rottinghaus signed the customer order. All–Iowa contends that the customer order form signed by Rottinghaus makes no reference to a warranty disclaimer.[6] Linear Dynamics later supplied invoices to All–Iowa, the reverse side of which recited the terms and conditions of the sale of epoxy. After receiving the invoices for the epoxy, All–Iowa paid Linear Dynamics for the epoxy.

Linear Dynamics' invoices contained the following terms and conditions:

**LIMITED EXPRESS WARRANTY AND DISCLAIMER OF IMPLIED WARRANTIES.** All products and materials delivered by Seller will conform

5. On March 7, 1996, prior to submitting its bid, All–Iowa contacted Linear Dynamics to obtain a quote for the epoxy. Linear Dynamics provided a price quotation of $22.00 per gallon of epoxy. The price quotation states that it is subject to Linear Dynamics' terms and conditions.

6. While the customer order itself does not refer to the terms and conditions, Plaintiff's Exhibit 5 appears to reproduce a portion of "Terms and Conditions of Sale." Due to the appearance of the terms and conditions on Plaintiff's Exhibit 5, the Court questions the genuineness of All–Iowa's contention that the terms and conditions were not attached to the customer order. At summary judgment, the Court does make a credibility finding concerning this issue.

to such of Buyer's written designs and specifications which were accepted in a writing signed by Seller. Seller warrants its products to be of sound workmanship and material. In the event of (i) a patent defect in any product being notified to Seller in writing immediately upon the discovery thereof, but in no event later than seven (7) days of the delivery date of the product concerned, or (ii) a latent defect in any product being notified to Seller in writing immediately upon the discovery thereof, but in no event later than six (6) months of the delivery date of the product concerned, and in each case Seller being satisfied that the defect is the result of unsound workmanship or material, Seller will either reach an agreed settlement in respect of the defect or at its option and at its own cost repair or replace the nonconforming product or refund the purchase price thereof, provided always that Seller shall be liable only in respect of patent defects and latent defects notified within seven (7) days and six (6) months, respectively, of the delivery date of the product concerned. Nonconforming products shall be disposed of by Buyer at the cost and written direction of Seller. Except as herein above stated, Seller's products are sold AS IS, and no employee, agent, dealer or other person is authorized to give any warranties on behalf of Seller in addition to or different from those herein given or to assume for Seller any other liability in connection with any of its products. **THE FOREGOING WARRANTY IS SELLER'S SOLE WARRANTY AND IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR BUYER'S PURPOSE.** The remedy set forth Buyer's exclusive remedy for any breach of Seller's warranty and for any defect or nonconformity whatsoever in any products or materials sold by Seller, whether Buyer's claim is based on contract, warranty, negligence or tort. **SELLER SHALL IN NO EVENT BE LIABLE FOR LOST PROFITS, CLAIMS OF THIRD PARTIES OR FOR SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES WHETHER OR NOT FORESEEABLE BY SELLER....**

The terms and conditions specifically provide that Linear Dynamics is not offering any "technical advice" to All–Iowa and that the limited remedy set forth in the limited express warranty provision is the exclusive remedy for any "defect or nonconformity" in the epoxy material.[7]

The Minnesota DOT requires that a one-pint sample of epoxy furnished for the contract be submitted to the Minnesota DOT Materials Laboratory in Maplewood, Minnesota at least fifteen days prior to use. Linear Dynamics did not submit a one-pint sample of the epoxy to the Minnesota DOT Materials Laboratory. James McGraw, Minnesota DOT analytical lab supervisor, testified in deposition that the Minnesota DOT received "very few" samples of epoxy from manufacturers and that this was a requirement that was enforced "intermittently." Linear Dynamics provided certification to All–Iowa that the epoxy supplied for the projects was formulated in accordance with the Minnesota DOT epoxy specifications for inclusion on the Minnesota DOT approved products list.

All–Iowa installed pavement markings using Linear Dynamics' epoxy. It was de-

---

**7.** At the October 16, 2003 summary judgment hearing, All–Iowa conceded that it did not provide notice of an alleged breach of express warranty in compliance with the limited express warranty. All–Iowa accordingly abandoned its breach of express warranty claims.

termined, after application of the epoxy, that All–Iowa used fast-set epoxy on the Minnesota DOT projects, contrary to the special requirements of the Minnesota DOT contracts requiring slow-set epoxy. All–Iowa and Linear Dynamics agree that the Minnesota DOT projects sustained substantial snow plow damage. Snow plow damage is not indicative of any defect in the epoxy and the parties agree Linear Dynamics may not be held legally responsible for snow plow damage.

Retroreflectivity readings of one of the Minnesota DOT projects by mobile scanners on August 29, 1996 reflected marginal performance for the pavement markings applied by All–Iowa using fast-set epoxy from Linear Dynamics. In 1997, the Minnesota DOT advised All–Iowa of the impaired retroreflectivity readings for the projects. On May 13, 1997, the following people met for a demonstration of All–Iowa's application of pavement markings: Richard Refshauge, President and CEO of All–Iowa; Greg Rottinghaus and Tony Fuller, All–Iowa's epoxy application crew; Curt Larson of Potters Industries; Mark Anderson, project engineer; and James Carlson, Minnesota DOT Laserlux Van Operator. At the demonstration, All–Iowa applied a test stripe using Linear Dynamics' epoxy. James Carlson and Mark Anderson report that All–Iowa's application of the test stripe was appropriate. However, the retroreflectivity value of the test stripe was marginal. Taking retroreflectivity readings on the same day as the actual application represents a "horrible time" to get any real semblance of retroreflectivity readings." (Carlson Dep. p. 24, ll. 5–7). The correct application of epoxy, including acceptable retroreflectivity, is subject to application variables. Epoxy may fail as applied on a road surface or may have impaired retroreflectivity for a number of reasons that are not associated with any defect in the formulation of the epoxy by the manufacturer.

### B. Delivery of the Maxi–900 Epoxy Application Unit

By sales order dated June 24, 1999, All–Iowa ordered a Maxi–900 custom-built long-line epoxy striping machine (the "Maxi–900") from Linear Dynamics. The sales quotation does not provide a specific delivery date. Rather, it provides that "[t]his quotation is valid ... for delivery *60 Days After Receipt of Chassis.*" (emphasis supplied). Linear Dynamics delivered the Maxi–900 to All–Iowa on October 22, 1999. All–Iowa contends Linear Dynamics is liable for actual damages and liquidated damages resulting from the alleged late delivery of the Maxi–900.

At the time of purchase, Brian Benson, a representative of All–Iowa, claims he emphasized to Steven Shinners, a representative of Linear Dynamics, that delivery of the Maxi–900 was essential by the end of August 1999. All–Iowa had three statewide contracts which were to commence on September 1 and delivery of the Maxi–900 was essential to the completion of those projects. Linear Dynamics contends it did not promise a delivery date. Linear Dynamics further contends that even if the Maxi–900 was delivered late, it is excused from liability because Linear Dynamics encountered delay outside its reasonable control in obtaining from a third-party supplier a key component of the Maxi–900.

The terms and conditions with respect to the delivery of the Maxi–900 are as follows: [8]

8. All–Iowa contends sales quotation 2733/3 constitutes the contract between the parties regarding the Maxi–900. Linear Dynamics contends a later sales quotation, 2733/4 constitutes the contract. Because both sales quotations 2733/3 and 2733/4 contain identical terms and conditions with respect to the delivery of the Maxi–900, the Court need not determine, for purposes of the instant Motion

**4. DELAYS.** Delivery dates shall be regarded as approximate. Seller shall be excused from the obligation to make timely deliveries when delay in delivery is caused directly or indirectly by an act of God, accident, labor trouble, act of government, act of Buyer, delay or default by subcontractor or supplier or other cause beyond Seller's reasonable control. Seller shall not be liable to Buyer for any such delay in delivery and, notwithstanding any such delay, Buyer shall not be excused from its obligation to take and pay for products ordered unless Buyer reasonably notifies Seller of Buyer's cancellation and reimburses Seller as provided in Paragraph 6.

All–Iowa contends it is entitled to liquidated damages resulting from the late delivery. Sales quotation 2733/3 contains a liquidated damages provision which All–Iowa unilaterally handwrote on the sales quotation. There is no evidence Linear Dynamics received or agreed to the liquidated damages provision.

### C. Breach of Implied Warranty of Merchantability Claim Relating to the Maxi–900

All–Iowa asserts a claim for breach of implied warranty of merchantability, alleging the Maxi–900 has not performed adequately. Linear Dynamics' technician, Marvin Mayle, spent a few days in the initial "shakedown" of the Maxi–900 and thereafter worked with All–Iowa in completing at least two epoxy projects in October 1999. Mayle testified in deposition that the Maxi–900 was working properly when he departed All–Iowa's facility on October 30, 1999. All–Iowa contends it continued to experience problems with the Maxi–900 after Mayle left All–Iowa's facility, including water heating problems and furnace malfunctions. All–Iowa contends

it made repeated telephone calls to Linear Dynamics for technical support.

### D. Model 60 Skid–Mount Epoxy Application Unit

On May 4, 1999, All–Iowa paid $100,000 to Linear Dynamics for a Model 60 Eposkid Material Application Unit (the "Model 60"). The Model 60 was delivered to All–Iowa on or about June 24, 1999. The sales quotation sets forth the written terms and conditions for the sale of the Model 60, which provide in pertinent part:

> Any sale arising out of this Quotation shall be governed exclusively by these Terms and Conditions of Sale except as expressly modified or supplemented in a writing signed by Seller. Seller shall in no event be deemed to have accepted any different or additional terms, whether included in Buyer's purchase order or other communication from Buyer.
>
> **10. MERGER AND MODIFICATION.** These Terms and Conditions of Sale contain the entire understanding and agreement between Buyer and Seller and supersede any prior written or oral understanding or agreements respecting the subject of these terms and conditions. It is expressly agreed that these Terms and Conditions of Sale shall supersede any prior written forms of Buyer. These terms and conditions may not be altered, modified or waived except by a writing signed by both Buyer and Seller.

The terms and conditions set forth a limited express warranty providing:

> **8. LIMITED EXPRESS WARRANTY AND DISCLAIMER OF IMPLIED WARRANTIES.** All products and materials delivered by Seller will conform to such Buyer's written designs and specifications which were accepted in a writing signed by Seller. Seller warrants its products to be of sound workmanship

for Summary Judgment, which sales quotation constituted the parties' agreement.

and material. In the event of (i) a patent defect in any product being notified to Seller in writing immediately upon the discovery thereof, but in no event later than seven (7) days of the delivery date of the product concerned, or (ii) a latent defect in any product being notified to Seller in writing immediately upon the discovery thereof, but in no event later than six (6) months of the delivery date of the product concerned, and in each case Seller being satisfied that the defect is the result of unsound workmanship or material, Seller will either reach an agreed settlement in respect of the defect or at its option and at its own cost repair or replace the nonconforming product or refund the purchase price thereof, provided always that Seller shall be liable only in respect of patent defects and latent defects notified within seven (7) days and six (6) months, respectively, of the delivery date of the product concerned. Nonconforming products shall be disposed of by Buyer at the cost and written direction of the Seller. Except as herein above stated, Seller's products are sold AS IS, and no employee, agent, dealer or other person is authorized to give any warranties on behalf of Seller in addition to or different from these herein given or to assume for Seller any other liability in connection with any of its products. **THE FOREGOING WARRANTY IS SELLER'S SOLE WARRANTY AND IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES EXPRESSED OR IMPLIED, INCLUDING WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR BUYER'S PURPOSE.** The remedy set forth is Buyer's exclusive remedy for any breach of Seller's warranty and for any defect or nonconformity whatsoever in any products or materials sold by Seller, whether Buyer's claim is based on contract, warranty, negligence or tort. **SELLER SHALL IN NO EVENT BE LIABLE FOR LOST PROFITS, CLAIMS OF THIRD PARTIES OR FOR SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES, WHETHER OR NOT FORESEEABLE BY SELLER.** The warranty shall not apply to (i) products affected by wear and tear, misuse or neglect, (ii) products which, without the prior written consent of Seller, have been altered after title or risk thereto have passed Buyer, or from which the identification numbers or other marks have been altered or removed, (iii) products or component parts manufactured and separately warranted by a party other than Seller and (iv) tires or glass.

All–Iowa claims it sustained actual and consequential damages resulting from purported defects in the Model 60. In his affidavit, Richard Refshauge states that All–Iowa "repeatedly advised [Linear Dynamics] of the operational problems with [the Model 60]; that these problems were brought to the attention of [Linear Dynamics], both incident to attempting to obtain technical advice and ordering parts...." Greg Rottinghaus testified in deposition that he called Linear Dynamics "probably various times for [the Model 60]."

## IV. LEGAL ANALYSIS

### A. Negligence Claim Relating to the Epoxy

■ In Count I of its Complaint, All–Iowa claims Linear Dynamics was negligent in supplying the wrong type of epoxy.[9] In response, Linear Dynamics

---

9. At the hearing on summary judgment held October 16, 2003, All–Iowa admitted its negli-
gence claim was filed under Iowa Code § 668.

contends All–Iowa's negligence claim must fail because: (1) Iowa law [10] does not recognize negligence as a cause of action where the plaintiff suffers only economic loss; and (2) All–Iowa cannot establish Linear Dynamics breached any duty.

"The well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *Nebraska Innkeepers, Inc. v. Pittsburgh–Des Moines Corp.*, 345 N.W.2d 124, 126 (Iowa 1984) (citing *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309, 48 S.Ct. 134, 72 L.Ed. 290 (1927); *General Foods Corp. v. United States*, 448 F.Supp. 111, 112 (D.Md.1978)). Under Iowa law, a plaintiff can recover for purely economic loss only in contract and not in tort law. *Flom v. Stahly*, 569 N.W.2d 135, 140 (Iowa 1997). Here, All–Iowa has alleged only economic loss.[11] Further, All–Iowa has premised its claim in tort and not in contract law. Since Iowa law does not permit claims for purely economic loss to be premised on tort theories, All–Iowa's negligence claim in Count I must fail.[12]

### B. Breach of Implied Warranty Claims Relating to the Epoxy

Linear Dynamics argues it is entitled to judgment as a matter of law with regard to All–Iowa's claims in Count I for breach of implied warranty of merchantability and breach of implied warranty of fitness for a particular purpose because these claims are barred by the written terms and conditions. In response, All–Iowa contends that: (1) All–Iowa did not receive a copy of the disclaimer at the time it received the epoxy; and (2) the disclaimer is unconscionable and therefore the implied warranties of merchantability and fitness for purpose apply.

### 1. The Terms of the Contract

All–Iowa contends it did not agree to the implied warranty disclaimer contained in the invoice because it did not receive a copy of the terms and conditions at the time it received the epoxy. Pursuant to § 2–207 of the Uniform Commercial Code, adopted in Iowa as Iowa Code § 554.2207, merchants can contract for the sale of goods without drafting a formal contract. Section 2–207 provides:

1. A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

2. The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

a. the offer expressly limits the acceptance to the terms of the offer;

b. they materially alter it; or

---

**10.** Federal courts are bound by the substantive law of the forum state in diversity actions. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The parties do not dispute Iowa law governs the substantive issues in this case.

**11.** All–Iowa claims its property was damaged because it had an ownership interest in the epoxy and the epoxy was worthless to All-

Iowa. The Court finds this argument without merit and that All–Iowa has failed to submit evidence of property damage.

**12.** Because the Court finds Linear Dynamics' economic loss argument dispositive, the Court need not address Linear Dynamics' argument that All–Iowa cannot establish Linear Dynamics breached any duty.

c. notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

U.C.C. § 2–207.

Thus, in its Motion for Summary Judgment, Linear Dynamics contends that the invoice is either an expression of acceptance or a written confirmation within the meaning of § 2–207. All–Iowa contends that subparagraph (b) makes the warranty disclaimer inapplicable here because the disclaimer materially altered the parties' agreement.

The Official Comment to § 2–207 clarifies the meaning of the term "materially alter" in subparagraph (b), as follows:

3. Whether or not additional or different terms will become part of the agreement depends upon the provisions of subsection (2). If they are such as materially to alter the original bargain, they will not be included unless expressly agreed to by the other party. If, however, they are terms which would not so change the bargain they will be incorporated unless notice of objection to them has already been given or is given within a reasonable time.

4. Examples of typical clauses which would normally "materially alter" the contract and so result in surprise or hardship if incorporated without express awareness by the other party are: a clause negating such standard warranties as that of merchantability or fitness for a particular purpose in circumstances in which either warranty normally attaches. . . .

U.C.C. § 2–207, Official Comment. According to the Official Comment, warranty disclaimers normally "materially alter" a contract. The Court notes, however, that whether an additional term "materially alters" the terms of the parties' agreement depends, in essence, on whether the additional term "result [s] in surprise or hardship if incorporated without express awareness by the other party." U.C.C § 2–207, Official Comment 4. Here, All–Iowa has failed to create a genuine issue of material fact with regard to whether it was actually "surprised" by the warranty disclaimer because the March 7, 1996 price quotation provided to All–Iowa contained the identical terms and conditions that are contained in the epoxy invoice. Thus, All–Iowa cannot profess to be surprised that the sale of epoxy was subject to an implied warranty disclaimer. The Court therefore holds that the disclaimer did not materially alter the terms of All–Iowa's purchase of epoxy within the meaning of U.C.C. § 2–207(2)(b). The Court shall therefore enforce the warranty disclaimer contained in the epoxy invoice.

### 2. *Unconscionability*

All–Iowa next argues that the implied warranty disclaimer should not be enforced because it is unconscionable. A bargain is unconscionable "if it is such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Smith v. Harrison*, 325 N.W.2d 92, 94 (Iowa 1982) (citing *Casey v. Lupkes*, 286 N.W.2d 204, 207 (Iowa 1979)). When determining whether a contract is unconscionable, the court should examine the following factors: assent, unfair surprise, notice, disparity of bargaining power, and substantive unfairness. *Gentile v. Allied Energy Prods., Inc.*, 479 N.W.2d 607, 609 (Iowa App.1991) (finding contract not unconscionable where parties were of equal bargaining power, plaintiff had opportunity to have an attorney review the contract, the contract was clear and easily read, the plaintiff had been a party to similar contracts in the past and was under no financial pressure to sign the contract) (citing *C & J Fertilizer, Inc. v. Allied Mut. Ins. Co.*, 227 N.W.2d 169, 181 (Iowa 1975)).

The burden of proving that a contract is unconscionable is on the party claiming the invalidity of the contract unless the contract is unjust and unreasonable on its face. *Matter of Estate of Ascherl*, 445 N.W.2d 391, 392 (Iowa App.1989) (citing *Rankin v. Schiereck*, 166 Iowa 10, 147 N.W. 180, 181–82 (Iowa 1914)).

■ All–Iowa argues the terms and conditions are unconscionable because Linear Dynamics is a subsidiary of a worldwide organization while All–Iowa is a "relatively small, closely held, private corporation." The Court finds the contract was structured by two corporations negotiating at arm's length. The contract is not an adhesion-type agreement, there is no evidence that All–Iowa was forced or coerced into entering into the agreement, and the warranty disclaimer is conspicuous and unambiguous. Moreover, both parties were experienced negotiators and there is no evidence of disparate bargaining power. The Court thus holds All–Iowa has failed as a matter of law to create a genuine issue of material fact with respect to whether the warranty disclaimer is unconscionable.

■ Having found that the warranty disclaimer is not unconscionable, the Court turns to the validity of the warranty disclaimer. Iowa Code § 554.2316(2) permits a seller to exclude an implied warranty of merchantability if the disclaimer: (1) mentions merchantability and (2) is conspicuous. A seller may exclude an implied warranty of fitness if the disclaimer: (1) is in writing and (2) is conspicuous. Iowa Code § 554.2316(2). The terms and conditions expressly limit the warranty of merchantability, mention merchantability, and are conspicuous as required by section 554.2316(2). The terms and conditions also validly disclaim the implied warranty

of fitness for a particular purpose. The Court finds the contract's disclaimer of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose is valid. Thus, Linear Dynamics is entitled to summary judgment as to All–Iowa's breach of implied warranties claims in Count I.

### C. Breach of Contract Claim Relating to the Late Delivery of the Maxi–900

■ In Count II, All–Iowa claims Linear Dynamics is liable for late delivery of the Maxi–900. Linear Dynamics contends it never promised a delivery date and even if the Maxi–900 was delivered late, the terms and conditions excuse it from liability because the delay was caused by a third-party supplier.

The contract[13] provides: "[t]his quotation is valid ... for delivery *60 Days After Receipt of Chassis.*" (emphasis supplied). All–Iowa contends the contract required delivery of the Maxi–900 before August 27, 1999. The Maxi–900 was delivered to All–Iowa on October 22, 1999. Linear Dynamics contends the J formulator pumps were non-inventory items and the supplier's delayed delivery of these pumps delayed Linear Dynamics' delivery of the Maxi–900. Linear Dynamics thus submits that pursuant to the terms and conditions, it is excused from liability for any alleged late delivery.

The terms and conditions relating to the sale of the Maxi–900 provide that "[d]elivery dates shall be regarded as approximate. Seller shall be excused from the obligation to make timely deliveries when delay in delivery is caused directly or indirectly by an act of God, accident, labor trouble, act of government, act of Buyer,

---

13. As noted earlier, the parties dispute which price quotation constitutes the contract. Both price quotations 2733/3 and 2733/4 contain identical language regarding delivery, so the Court finds it unnecessary at this time to determine which contract controls.

delay or default by subcontractor or supplier or other cause beyond Seller's reasonable control." All–Iowa contends Steven Shinners, Linear Dynamics' Vice President and General Manager, Equipment Division, assured All–Iowa that the Maxi–900 would be delivered by August 27, 1999 because the two major components of the machine, the chassis and the pumps, were already in Linear Dynamics' inventory.

Viewing the evidence in a light most favorable to All–Iowa, the Court finds All–Iowa has presented evidence sufficient for a reasonable jury to infer the Maxi–900 was not delivered by the promised date (i.e., within 60 days from receipt of the chassis). The Court further finds All–Iowa has created a genuine issue of material fact regarding whether the delayed delivery was caused by supplier delay outside Linear Dynamics' control. The Court thus concludes that summary judgment is improper with regard to All–Iowa's breach of contract claim in Count II.

### D. Liquidated Damages Claims

■ In its Motion for Summary Judgment, Linear Dynamics contends it is entitled to judgment as a matter of law with regard to All–Iowa's claim for liquidated damages. In response, All–Iowa argues it is entitled to liquidated damages pursuant to a liquidated damages provision which was handwritten by All–Iowa on price quotation 2733/3. Linear Dynamics contends it did not agree to the liquidated damages provision in price quotation 2733/3 and that price quotation 2733/4, which does not contain a liquidated damages provision, superseded all prior price quotations.

"All contracts must contain mutual assent; mode of assent is termed offer and acceptance." *Anderson v. Douglas & Lomason Co.,* 540 N.W.2d 277, 285 (Iowa 1995). In this case, All–Iowa has presented no evidence that Linear Dynamics agreed to the handwritten liquidated dam-

ages provision. Linear Dynamics is therefore entitled to summary judgment with respect to All–Iowa's claims for liquidated damages.

### E. Breach of Implied Warranty of Merchantability Relating to the Maxi–900

In Count III of the Complaint, All–Iowa alleges actual and consequential damages for breach of implied warranties. Linear Dynamics argues it is entitled to judgment as a matter of law regarding All–Iowa's claim of breach of implied warranty of merchantability because this claim is barred by the written terms and conditions. In response, All–Iowa contends the implied warranty disclaimer in the written terms and conditions is unconscionable and therefore the implied warranty of merchantability applies.

For the same reasons discussed above, the Court finds the terms and conditions relating to the sale of the Maxi–900 are not unconscionable and thus validly disclaimed the implied warranty of merchantability. Linear Dynamics is therefore entitled to summary judgment as to All–Iowa's implied warranty of merchantability claim relating to the sale of the Maxi–900 contained in Count III.

### F. Breach of Implied Warranty of Merchantability Relating to the Model 60

Linear Dynamics argues it is entitled to judgment as a matter of law regarding All–Iowa's claim of breach of implied warranty of merchantability with respect to the Model 60 because this claim is barred by the written terms and conditions. In response, All–Iowa contends the disclaimer is unconscionable and therefore the implied warranty of merchantability applies.

For the same reasons discussed above, the Court finds the terms and conditions relating to the sale of the Model 60 are not

unconscionable and thus validly disclaimed the implied warranty of merchantability. Linear Dynamics is therefore entitled to summary judgment as to All–Iowa's implied warranty claim relating to the sale of the Model 60 contained in Count IV.

### G. Consequential Damages Claims

■ All–Iowa alleges it is entitled to consequential damages relating to its claims in Counts III and IV regarding its purchase of the Maxi–900 and the Model 60. Linear Dynamics argues it is entitled to summary judgment with regard to claims for consequential damages because the terms and conditions expressly exclude consequential damages. In response, All–Iowa contends the exclusion of consequential damages is unconscionable because the exclusion of consequential damages would be "substantively unfair."

The Court has already determined the contracts relating to the sale of the Maxi–900 and the Model 60 are not unconscionable. Consequently, the Court finds All–Iowa's claims for consequential damages are properly excluded by the terms of the contracts. The Court therefore enters summary judgment with regard to All–Iowa's claims for consequential damages in Counts III and IV.

## V. CONCLUSION

**IT IS HEREBY ORDERED** that:

1. Defendant Linear Dynamics, Inc.'s Motion for Summary Judgment (docket no. 38) is GRANTED in part and DENIED in part.

2. The following claims are hereby DISMISSED:

   a. Plaintiff All–Iowa's claim of negligence in Count I.

   b. Plaintiff's claim for liquidated damages in Count I.

   c. Plaintiff's claim of breach of implied warranty of merchantability in Count I.

   d. Plaintiff's claim of breach of implied warranty of fitness for a particular purpose in Count I.

   e. Plaintiff's claim of breach of express warranty in Count I.

   f. Plaintiff's claim for consequential damages in Count III.

   g. Plaintiff's claim of breach of implied warranty of merchantability in Count III.

   h. Plaintiff's claim of breach of express warranty in Count III.

   i. Plaintiff's claim for consequential damages in Count IV.

   j. Plaintiff's claim of breach of implied warranty of merchantability in Count IV.

   k. Plaintiff's claim of breach of express warranty in Count IV.

3. This case shall proceed to trial on the following claim:

   a. Plaintiff's claim of actual damages for breach of contract in Count II.

4. The parties shall file with the Court a revised Proposed Final Pretrial Order within ten calendar days of the filing of this Order.

5. The parties shall, within one week of the filing of the Proposed Final Pretrial Order, contact the chambers of Chief Magistrate Judge John Jarvey to schedule another Final Pretrial Conference. The Final Pretrial Conference may be conducted by telephone conference call if Chief Magistrate Judge John Jarvey agrees.

6. The parties are encouraged to explore settlement.