# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-1766

_____

BVS, Inc.

*Plaintiff - Appellant*

v.

CDW Direct, LLC

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: December 17, 2013
Filed: July 17, 2014 (Corrected: 07/18/2014)

_____

Before BYE, BRIGHT, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

BVS, Inc. (BVS) sued CDW Direct, LLC (CDW) alleging breach of contract, unjust enrichment, and fraud. The dispute arose from BVS's contract with CDW for a computer storage area network (SAN). The district court granted summary judgment in favor of CDW, finding no genuine dispute of material fact regarding the contract's integration, performance, or how course of dealing affected the contract.

BVS appeals arguing the district court erred in granting summary judgment. We reverse and remand.

## I

BVS provides online training to banks and credit unions. To do so, it uses a main computer system located in Cedar Rapids, Iowa, and keeps a disaster recovery system at a separate location. As a BVS representative testified, if the system "goes down or is unavailable, we're out of business." In late 2010, BVS sought to update several components of its system, including its SAN. Updating the SAN would involve an entire solution: hardware, software, implementation, testing and support.

Prior to this, BVS had an ongoing business relationship with CDW. CDW resells technology products and services through its internet-based retail business. BVS purchased products and services from CDW on numerous occasions. BVS would either place an order online, or request a quote from Amer Harb, the CDW account manager assigned to BVS. After Harb provided a quote, BVS would either purchase that item online, or a CDW employee would access the BVS account and place the order.

These transactions numbered in the hundreds. Through them, Harb developed a relationship with BVS. When he learned that BVS was looking for a new SAN solution, he saw an opportunity to further that relationship. However, Roy Karon, BVS's owner, expressed doubt that CDW could deliver on such a complicated project.

It soon became clear just how complicated the project would be. Harb brought in a third party, Net App, Inc. (Net App), for assistance in developing the SAN solution. Net App then arranged for another third party, Arrow Electronics, Inc. (Arrow), to install and implement the SAN solution. During frequent and extensive discussions, BVS told Harb of their need for a total SAN solution and that BVS was

not looking to simply purchase software and hardware. Rather, BVS told Harb it required a complete solution, fully installed and tested to ensure it met BVS's needs. However, Harb's expertise was other than technical. For example, he had another CDW employee ghost-write an email of technical questions. BVS did not know the email was ghost-written at the time, and Karon testified that, had he known Harb had sent a ghost-written email, he would have insisted on dealing with someone from CDW with more technical competence.

On December 3, 2010, CDW sent BVS a quote for hardware, software, and services for the SAN solution. After receiving this quote and still doubtful CDW could deliver, Karon called Harb directly to express his concerns. Harb explained CDW had data center expertise; Karon took this to mean that CDW had the expertise to deliver a SAN solution.

BVS sent CDW a purchase order, which incorporated the quote, and listed hardware, software, training, support services, and six "Arrow Provisioned Services." The next day, CDW sent a purchase order to Arrow to fulfill BVS's purchase order. Harb testified that, at this point, CDW had reached an agreement with BVS; indeed, he testified CDW would not have sent a purchase order to Arrow without such an agreement. One month after BVS sent its purchase order, and after the agreement was made that Harb testified to, CDW sent BVS an invoice (Invoice).

In addition to the items detailed in BVS's purchase order, on its back the Invoice listed Terms and Conditions, including warranty disclaimers, statements that the customer's "sole and exclusive remedy [is] at the sole option of the Seller" to either have CDW reperform or to seek a refund, and further statements limiting CDW's liability. These terms were included on documents generated by BVS's previous, unrelated transactions with CDW. Further, the CDW web site contained disclaimers and liability limitations and were accessible when BVS purchased through CDW's

web site.  The instant agreement, however, was not reached in the same manner as the previous transactions.

In early February 2011, the parties held a kickoff phone call to discuss and schedule the project.  Hardware and software were delivered.  Installation was ultimately scheduled to be complete by March 3, 2011.  The project, however, failed.  BVS was unable to use its new SAN system.  Attempts to fix problems plaguing the system either failed or were refused, until finally, on May 19, 2011 – more than two months after the expected completion of the project – BVS decided the system would not be able to function properly.  BVS attempted to send the hardware and software back to CDW.  CDW refused to take back the system.

BVS brought suit against CDW, alleging breach of contract, unjust enrichment, and fraud.  In granting CDW's motion for summary judgment on these claims, the district court found BVS's purchase order in early December constituted an offer, and CDW accepted that offer when it sent a purchase order to Arrow.  By this offer and acceptance, the district court found a contract existed before CDW's Invoice. The district court, however, found the parties' course of dealing supplemented the terms of the agreement and the Invoice integrated the agreement.  This finding incorporated the Invoice's warranty disclaimers and meant CDW performed its obligations to deliver hardware and software.  BVS appealed.

II

We review a district court's interpretation of Iowa law and its decision on summary judgment *de novo*, viewing the evidence in the light most favorable to BVS, the non-moving party.  Cagin v. McFarland Clinic, P.C., 456 F.3d 903, 906 (8th Cir. 2006).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to relief as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if the evidence is such that it

-4-

could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." Amini v. City of Minneapolis, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986)).

We agree with the district court's finding that BVS's original purchase order constituted an offer and that CDW accepted that offer when it sent a purchase order to Arrow. We must then determine whether, under Iowa law, the agreement between CDW and BVS was integrated by CDW's Invoice. We conclude the district court erred when it ruled, as a matter of law, that the Invoice – sent after offer and acceptance had already created a contract – integrated the contract with respect to terms not included in either BVS's offer or CDW's acceptance.

Under Iowa law, "[a]n agreement is fully integrated when the parties involved adopt a writing or writings as the final and complete expression of the agreement." Cagin, 456 F.3d at 907 (quoting Whalen v. Connelly, 545 N.W.2d 284, 290 (Iowa 1996)). If a contract is fully integrated, "extrinsic evidence [may not] contradict (or even supplement) the terms of the written agreement." Id. at 907-08 (quoting Whalen, 545 N.W.2d at 290). The determination of "[w]hether or not a written agreement is integrated is a question of fact to be determined by the totality of the evidence." Id. at 908 (quoting Whalen, 545 N.W.2d at 290).

In Cagin, because the plaintiff could not produce evidence "to suggest the [contract] did not constitute the final expression of the parties' agreement[,]" the court found "no facts in dispute which could lead a reasonable person to find the [contract] was not fully integrated." 456 F.3d at 908. Here, however, the parties dispute the particular facts of the oral agreement stemming from Harb and Karon's conversation. Karon allegedly asked for reassurances CDW was capable of the project; Harb allegedly assured him CDW was. Those alleged promises – part of the "totality of the evidence" – suggest the Invoice was not the "final and complete expression of the

agreement."  A reasonable jury, weighing this evidence, could return a verdict for either party.

The district court – considering the parties' prior course of dealing as part of the "totality of evidence" – held the parties' course of dealing supplemented the terms of the contract.  Because the Invoice came after the agreement, its terms are "proposals for addition to the contract."  Iowa Code § 554.2207.  As to merchants, such additional terms become part of the contract unless they materially alter it, i.e., come as a surprise to the party opposing enforcement.  Id.; see also All-Iowa Contracting Co. v. Linear Dynamics, Inc., 296 F. Supp. 2d 969, 979 (N.D. Iowa 2003) (concluding terms negating standard warranties are normally considered material alterations unless there is no surprise to the party opposing enforcement of the terms negating the warranties).  If the course of dealing supplemented the contract, then, BVS would not be surprised by the late inclusion of the warranty disclaimers.

BVS argues the course of dealing between the parties was inapplicable to the instant contract.  Such consideration is properly a question of fact.  See Grace Label, Inc. v. Klif, Inc., 355 F. Supp. 2d 965, 972 (S.D. Iowa 2005) (concluding summary judgment was inappropriate on an issue which involved the parties' course of dealing); see also St. Ansgar Mills, Inc. v. Streit, 613 N.W.2d 289, 295-96 (Iowa 2000) (reversing a grant of summary judgment in case involving question whether a delay in sending written confirmation of an oral contract was reasonable under the parties' course of dealing).

BVS and CDW did have extensive dealings with one another.  The three ways BVS normally purchased from CDW were to either (1) place an order online, (2) request a quote from Harb for a discounted price and then purchase the item online, or (3) request a quote from Harb and notify Harb via telephone or email of an intention to purchase the item at that discounted price, at which point a CDW

employee would access BVS's account and place the order.[1] The transaction at issue here, however, did not have any of the earmarks associated with the parties' prior course of dealing. Their absence is strong evidence this particular transaction was unique, and there was no intention to incorporate the warranty disclaimers included with the Invoice. Without the course of dealing, BVS would be surprised to find warranty disclaimers added after the agreement was reached. A finder of fact, then, should determine whether the parties' course of dealing supplemented the instant agreement.

For these reasons, we find genuine issues of material fact remain as to whether the qualitatively different nature of this particular transaction overrides any previous course of dealing, whether the Invoice integrated the agreement, and whether Harb's alleged assurances to Karon provided warranties to the contract. Such questions should be addressed to the finder of fact.[2]

---

[1]BVS moved to exclude Harb's affidavit, which detailed these previous dealings, from the record for summary judgment, on the grounds that it was in violation of Federal Rule of Civil Procedure 26. The district court denied that motion, and BVS appeals that denial. Because we are ruling in BVS's favor in reversing the grant of summary judgment, its motion to exclude the affidavit is moot.

[2]Having decided a finder of fact should determine whether the parties' agreement was incorporated by the Invoice, we recognize the finder of fact should be asked to determine which terms were incorporated into the agreement. This fact-finding will determine dispositive elements regarding BVS's breach of contract claim. "Under Iowa law, '[i]n a breach-of-contract claim, the complaining party must prove: (1) the existence of a contract; *(2) the terms and conditions of the contract*; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.'" Cagin, 456 F.3d 903 at 906 (quoting Molo Oil Co. v. River City Ford Truck Sales, Inc., 578 N.W.2d 222, 224 (Iowa 1998)) (emphasis added). Since, under Iowa law, "[g]enerally, questions of performance or breach are for the jury[,]" Iowa-Ill. Gas & Elec. Co. v. Black Veatch, 497 N.W.2d 821, 825 (Iowa 1993), the jury needs to decide the ultimate issue of breach or performance.

## III

The district court improperly decided questions of fact which should be left to a jury. We reverse the district court's grant of summary judgment[3] and remand the case for further proceedings consistent with this opinion.

_____

[3]In granting CDW's motion for summary judgment, the district court dismissed BVS's fraud claim. In reversing the summary judgment, we reinstate the fraud claim.